Campbell, Chief Justice,
reviewing the facts found to be established, delivered the opinion of the court:
The plaintiff had two contracts with the defendants, one dated June 24, 1909, and the other dated June 30, 1909, and *219 both of them providing for the construction and delivery of boats known as lorchas. The first contract was for six steel lorchas and the second contract was for four wooden lorchas. The deliveries were to be made to the chief quartermaster, Philippine Division, in Manila Bay, and the dates of the contemplated deliveries were mentioned in tbe contracts. One of the steel lorchas was delivered ahead of time and three of the wooden lorchas were delivered ahead of time. Two of the lorchas, one of steel due to be delivered December 4 and one of wood due to be delivered November 19, were started from Hongkong in time to have reached their destination within the period fixed for their delivery, but were lost at sea and were subsequently replaced by the claimant. All the others were delayed beyond the contract time. The delay in the delivery of three of them was excused in the auditing department upon the ground that the delay was occasioned by the act of God, which, under the provisions of the contract, was made an exception to the plaintiff’s obligation to deliver within the stipulated time.
For the delay in making delivery of two of the steel and one of the wooden lorchas there was deducted from the amount due the plaintiff the sum of $5,480 under the provisions of the second paragraph of the contracts, and to recover said sum this suit was brought. These three lorchas, numbered, respectively, 460, 461, and 468, were deliverable under paragraph 4 of the contracts as follows: No. 460 on or before December 18, 1909; 461 on or before January 1, 1910; and 468 on or before December 14, 1909. No. 460 was 72 days late in delivery, 481 was 77 days late, and 468 was 125 days late in delivery, making an aggregate of 274 days delay, for which plaintiff was charged $20 per day as liquidated damages.
The proof shows that all of these boats were completed in time to have been delivered sooner than the dates fixed for their delivery, two of them having been completed early in November, and the third, finished on December 3, 1909, was practically completed sooner.
The evidence shows that generally during the months of October and November small craft can be towed across the *220 China Sea safely, but that during said months in 1909 the conditions prevailing on that sea were abnormal and typhoons occurred with unusual frequency. As above stated, two of the lorchas were lost in the effort to cross in November. It was because of this abnormal and dangerous condition that plaintiff was excused for its failure to deliver the lorchas due in November.
According to the record in this case the northeast monsoon generally sets in over the China Sea about December 1 and lasts until April or May, when the southwest monsoon begins; the latter does not bring wind or produce stormy weather on said sea, but during the northeast monsoon light-erage or towages can only be done at great risk and danger to the craft being towed. Safe towage can usually be relied upon during typhoon weather — from April to December— because, as we are told, while there are occasional bursts of very stormy weather during that period they are succeeded by long intervals of fine weather, with calm sea, which makes towage safe.
The plaintiff insists that the contracts do not authorize the deduction of liquidated damages for delay in delivering the said lorchas, but confine the liquidated damages to delay in their completion, and refers to the several paragraphs of each of the contracts as sustaining this contention because, it is insisted, that while article 2 mentions a failure “ to complete in all respects the lorchas called for under this agreement on or before the dates stipulated for such completion ” and fixes the damages at $20 per day for each day that “ each lorcha remains uncompleted after such dates,” there is no mention in specific terms of delay in delivery.
Unquestionably the' whole contract, and not segregated portions of it, must be examined when construction of it is resorted to. “ The elementary canon of interpretation is not that particular words may be isolatedly considered, but that the whole contract must be brought into view' and interpreted with reference to the nature of the obligations between the parties and the intention which they may have manifested in forming them.” O'Brien v. Miller, 168 U. S., 287, 296; Boardman v. Lessees, 6 Pet., 318, 345. The under *221 taking of the plaintiff was to furnish the labor and material necessary to construct and to “ construct and deliver complete in every detail” certain lorchas to the chief quartermaster at Manila for a specified consideration. These things were to be done in accordance with the plans and specification and “ Instructions to bidders ” attached to and made a part of the contract. Among others, said instructions required the bidders to state when the work would begin and when it would be completed. The contracts (par. 4) refer to the dates on or before which the lorchas are severally to be delivered and the final delivery made, and do not mention “ the dates stipulated for such completion,” if completion is to be confined to something short of actual delivery. It is hence argued for defendants that the failure “ to complete in all respects the lorchas ” for which liquidated damages are agreed upon means a failure to deliver complete in all respects the said lorchas, and further that the defendants were not concerned with the times of completion of construction, but were interested in the completion of delivery. The latter phase of this contention can not be supported under the facts of the case. The instructions to bidders, made part of the contract, required them- to “ state the time in which they will complete each vessel from the date of commencement of work,” and we think it is a fair assumption that the purpose of this requirement was to inform defendants’ representatives of the times which the several bidders would take to complete the work so that some regard could be had to the .times of delivery; that is, whether the lorchas would be completed so as to be deliverable within the period of the year when the China Sea would admit of delivery without too great risk of loss. It may reasonably be presumed that the Government’s agents had notice of the conditions which usually prevailed during the monsoons and their general effect upon towages over the China Sea. It was, we think, because of these well-known conditions that the Government’s representatives in their instructions spoke of the times of completion, and provided in their draft of the contracts for delivery “on or before” the several dates fixed therefor. They probably considered that if the *222 lorchas were completed in construction the certainty of delivery during October or November would be enhanced and that if the lorchas were not completed until after November there would be uncertainty as to when, in the usual conditions prevailing over the China Sea, delivery could be had.
The other phase of the contention is more difficult of solution. There is much force in the defendants’ argument that the provisions of paragraph 2 are to be interpreted in the light of the remainder of the contract and the intention shown thereby of the parties. The instructions to bidders informed them that in case of the failure of the contractor “ to complete the work and deliver same ” within the stipulated time the right was reserved by the United States to deduct $20 per day for each and every day “ required for completion of each lorcha ” in excess of the number of days stated in the contracts. The contracts were for the construction and delivery “ complete in every detail ” of the specified lorchas; the consideration to be paid was for the six lorchas in each contract “completed, delivered, and accepted,” as specified in article 1 of the contract. Dates on or before which deliveries were to be made are mentioned; provision is made by article 9 that in case of the contractor’s failure to comply with the contract the defendants can “complete the work” at the contractor’s expense; and article 2, while providing in terms for liquidated damages upon a failure “to complete in all respects the lorchas” on or before the dates stipulated “for such completion,” does not fix any dates for completion unless comprised within the meaning of “ deliveries ” mentioned in article 4.
These considerations may tend to the conclusion that if the said clause is to be given effect the completion in all respects of the lorchas includes their delivery. “A rigid adherence to the letter often leads to erroneous results and misinterprets the meaning of the parties.” Reed v. Insurance Co., 95 U. S., 23, 30. But where the language used is plain and unambiguous no construction is necessary, and in construing contracts words are to receive their ordinary and popular meaning. Moran v. Prather, 23 Wall., 492, 499. What the court should do is to ascertain and effectuate the *223 intention of the parties, but that intention is sought from the language used, and the words, not being words of art, must be given their usual and popular sense, “ even though the intention of the party drawing the contract may have been different from that expressed.” Calderon v. Atlas Co., 170 U. S., 272, 280. It is not allowable for the court, by construction, to import words into a written contract which materially change its meaning as expressed by the parties. Gavinzel v. Crump, 22 Wall., 308, 319. In other words, the intention which must be sought and which prevails is that which is ascertained from a proper consideration of the language of the contract.
It being competent for the parties to agree upon liquidated damages, the terms in which they saw fit to express that agreement are not necessarily to be interpreted by what the court may think the parties had in mind, if, in fact, they expressed something different.
The Government insists that article 2 authorized the deduction made by it from the compensation of the plaintiff because the latter failed to deliver the lorchas within the stipulated times, and the plaintiff replies that it completed the lorchas in time for their delivery, and failed to make deliveries because of the conditions prevailing on the China Sea and its inability to secure towage, and, further, that its contracts do not provide for liquidated damages upon a failure to deliver, but refer to a failure to complete. Claiming the right of deduction it is for the Government to show that the contracts authorize it.
The language used is that of the defendants, whose agents drew the contracts, and it is a rule of law that words will be construed most strongly against the party who used them. American Security Co. v. Pauly, 170 U. S., 160, 168. It seems to us that it was the original intention of the parties, evidenced by the clause of the instructions to bidders where the matter of liquidated damages is mentioned, to provide for the same upon failure to complete and deliver the several lorchas, the question here being whether that intention is expressed in the contract. In Germann & Co.'s case, 50 C. Cls., —, Judge Barney said that the rule allow *224 ing parties to agree upon the amount of damages to be paid in case of default sometimes operates with great severity, and “ there is generally no reason for its extension beyond the letter of the bond.”
Whatever of doubt there may be on the above phase of the case, we are satisfied the plaintiff should recover. Before the period for delivery under the first contract had expired, and similarly as to the second contract, the deputy quartermaster general, being the chief quartermaster, under the official seal of that office, notified the plaintiff’s agent at Manila that the plaintiff would be permitted “to proceed and complete the work, same to be done with utmost des-patch,” and that all expense incurred by the United States after December 14 (in the first contract and January 1 in the second) would be charged against the plaintiff and deducted when final payment was made. The reason for this action of the chief quartermaster (he being the person to whom by the provisions of the contracts delivery was to be made) seems apparent. The storms during October and November had prevented deliveries, and two lorchas had recently been lost. The dangers of loss if deliveries were attempted in December were great, and though the contract provided for delivery at stated times, and, let us assume, provided for liquidated damages, said officer was probably informed by the plaintiff’s agents, to whom said letters were addressed, that the lorchas were ready for shipment, and if he was not cognizant of the condition generally prevailing over the China Sea during that period of the year he did'know that two lorchas had a short time before been lost in the attempt to tow them to Manila. It seems prudent and reasonable that he should, under such circumstances, authorize the plaintiff to complete the work of delivery as soon as practicable. We must assume that he had authority to act as he did while he was at Manila. The letters show that the plaintiff had not asked for an extension of time, and the quartermaster may have desired to forestall attempts at further delivery during said period because of the risks attending them.
*225 The letters were accepted, and acted upon by the plaintiff, who made no further deliveries for some time thereafter although there was no delay in the completion of the lorchas within the contract period. The effect of said communications when accepted and acted upon by the plaintiff was to waive the liquidated damages, if article 2 provided for such damages. United Engineering Co.'s case, 234 U. S., 236, 242; Maryland Steel Co., 235 U. S., 451.
A judgment will accordingly be awarded the plaintiff for said sum of $5,480. And it is so ordered.
Booth, Judge, concurs in the above.