**LEE LEWIS CONSTRUCTION, INC., f/k/a Lee Lewis General Contractor, Inc., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 00–656C.

United States Court of Federal Claims.

Sept. 24, 2002.

James L. Wharton, Lubbock, TX, for plaintiff.

Brent M. McBurney, Trial Attorney, with whom were Robert D. McCallum, Jr., Assistant Attorney General, David M. Cohen, Director, Donald E. Kinner, Assistant Director, Civil Division, U.S. Department of Justice, Washington, DC, for defendant, Jason Marsh, United States Postal Service, of counsel.

*OPINION AND ORDER*

HEWITT, Judge.

This case is before the court on plaintiff's motion for summary judgment and defendant's cross-motion for partial summary judgment. Plaintiff Lee Lewis Construction, Inc. (Lee Lewis) was the general contractor for Contract No. 489954–86–J–0709 (contract) to construct a General Mail Facility in Midland, Texas, for the United States Postal Service (USPS). This action appeals the December 6, 1999 decision of the contracting officer awarding defendant $697,450 [1] for replacement of the roof installed at the facility. Joint Exhibits (JE) at 1101–1102. Defendant counterclaimed for payment of the cost of replacement of the roof on the theory, *inter alia*, that plaintiff is liable for breach of warranty. In the alternative, defendant

---

1. The text of the decision contains the amount $697,4520, an apparent typographical error. *See and compare* Defendant's Answer to Plaintiff's First Amended Complaint and Defendant's Counterclaim ¶¶ 12, 35 (*setting forth the amount cited by the court*).

seeks damages for latent defects in the roof material. For the following reasons, plaintiff's motion is GRANTED in part and is otherwise DENIED. Defendant's cross-motion is DENIED.

## I. Background

Lee Lewis is a construction corporation in Texas. Plaintiff's Motion for Summary Judgment and Brief in Support (Pl.'s MSJ) at 2. In 1987, the USPS contracted with Lee Lewis to construct a General Mail Facility (facility) in Midland, Texas. *Id.* The contract contained provisions concerning the warranty for the roof, as well as the materials to be used for the construction of the roof. JE at 271–275. The roof warranty provision stated, "The roofing contractor shall furnish to [defendant] the Manufacturer's 10–year 100% full value guarantee, covering both labor and materials, with an additional 5–year Materials Warranty." JE at 273. The roofing provision stated that the roofing membrane shall be "Polyvinyl Chloride (PVC) equal to Trocal Type S Roofing Membrane." *Id.* at 271.

Lee Lewis contracted with Anchor Roofing Company (Anchor Roofing), an authorized Trocal dealer, to install the roof on the facility. Pl.'s MSJ at 3.[2] The installation was completed on August 19, 1988. *Id.* The roof was manufactured by Dynamit Nobel of America, Inc. (Dynamit). *Id.* at 2. Dynamit provided the requisite ten-year warranty, covering both labor and materials, and a fifteen-year materials warranty.[3] JE at 644–649.

In 1988, USPS took possession and occupancy of the postal facility. Pl.'s MSJ at 3. Shortly after taking possession, USPS became aware of multiple roof leaks. *Id.* at 4. USPS notified Lee Lewis of the leaks, and several attempts were made to repair the

roof. Defendant's Proposed Findings of Uncontroverted Fact (Def.'s PFUF) ¶¶ 17–18. In 1995, representatives of Lee Lewis, USPS, Anchor Roofing and Dynamit met and agreed that USPS would deal directly with the manufacturer with regard to repairing or replacing the roofing membrane. *Id.* ¶ 20. Later that year, Dynamit's successors, HPG International, Inc. (HPG), replaced one-third of the postal facility's roof pursuant to the warranty. Pl.'s MSJ at 4.

In 1997, a hailstorm destroyed the portions of the roof that had not been repaired. JE at 1044, 1046. Defendant asked HPG to replace the roof in accordance with the Dynamit warranty. JE at 1046. However, HPG denied the claim based upon a provision in the warranty that excluded any damage due to hailstorms. JE at 1056. A professional engineer hired by defendant inspected the roof and concluded that the roof was not fit for the purposes intended and recommended that the roof be replaced to avert further problems. JE at 1597–1598. Defendant contracted with a separate company to replace the entire roof at a cost of $1,089,000. Def.'s PFUF ¶ 26. Defendant requested payment of $697,152[4] under the fifteen year warranty but HPG refused to pay for the replacement costs. JE at 1075–1078.

In December 1999, the USPS contracting officer (CO) concluded that Lee Lewis was in breach of warranty and was also liable on the theory of latent defects. JE at 1101–1102. Defendant requested that Lee Lewis pay for the replacement roof. *Id.* Lee Lewis filed suit seeking relief from the decision of the contracting officer and a declaration that Lee Lewis owes no monies to defendant.[5] Plaintiff's First Amended Complaint and First Amended Answer to Defendant's Counterclaim (Pl.'s Am.Compl.) at 10. Defendant

---

2. Facts cited to the pleadings of one party do not appear to be in dispute.

3. The materials warranty provided by Dynamit covered the repair or replacement of the roof for fifteen years, *see* JE at 645, which deviated from the specific requirement that a ten-year 100% full value guarantee extended with an additional five-year materials warranty be provided. *See* JE at 273. This deviation does not appear to bear on the resolution of the pending motions.

4. Defendant appears to have sought $697,152 from HPG (although it expended $1,089,000 for the entire roof replacement contract) because that was the cost of replacing the roof that was built under the contract. *See* JE at 1075.

5. Plaintiff originally filed its complaint in this matter on November 6, 2000 and filed an amended complaint on October 11, 2001.

counterclaimed for $697,450, the amount specified in the contracting officer's final decision, claiming breach of warranty, or, in the alternative, material failure of the roof caused by latent defects. Defendant's Answer to Plaintiff's First Amended Complaint and Defendant's Counterclaim (Def.'s Answer) at 6–7.

## II. Discussion

### A. Summary Judgment Standard of Review

Summary judgment is warranted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rule of the Court of Federal Claims (RCFC) 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Genuine issues are those that a reasonable jury could return a verdict for the non-movant. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. A material fact is one that might affect the outcome of the litigation. *Id.* The non-movant must establish the existence of a material element on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-movant's evidence is examined in the light most favorable to the non-movant, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and all justifiable inferences must be drawn in favor of the non-movant. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. When, as here, there are cross-motions for summary judgment before the court, each motion is evaluated under the same standard. *Cubic Defense Sys., Inc. v. United States*, 45 Fed.Cl. 450, 457 (1999).

### B. Warranty Issue

The parties' major dispute is whether plaintiff is liable on the labor and materials warranty required by the contract for the repair and replacement of the roof. Plaintiff alleges that it cannot be held liable for breach of warranty because Lee Lewis did not issue the warranty and is not a party to the warranty.[6] *See* Pl.'s MSJ at 8–12. Defendant counters that the contract required Lee Lewis to provide a warranty and did not establish a contractual relationship between any subcontractor and defendant. *See* Defendant's Response to Plaintiff's Motion for Summary Judgment and Defendant's Cross-Motion for Partial Summary Judgment (Def's Resp.) at 8–16. Matters of contract interpretation are appropriate for summary judgment. *See, e.g., U.S. Test, Inc. v. NDE Envtl. Corp.*, 196 F.3d 1376, 1379 (Fed.Cir. 1999).

Section 07530, ¶ 1.08, entitled "SPECIAL PROJECT WARRANTY" stated, "The roofing contractor shall furnish to the Owner the Manufacturer's 10–year 100% full value guarantee, covering both labor and materials, with an additional 5–year Materials Warranty." JE at 273. Plaintiff argues that Anchor Roofing was the "roofing contractor" referenced in the contract and that Anchor Roofing, not plaintiff, was responsible for obtaining a roof warranty from the manufacturer. Pl.'s MSJ at 8–9. Defendant maintains that this roof warranty provision, read in conjunction with other contract provisions, implicitly required plaintiff to provide a roof warranty to USPS. Def.'s Resp. at 7–10. In the alternative, defendant argues that the relevant provisions of the contract created a patent ambiguity as to which plaintiff, as the non-drafting party, had a duty to seek clarification. Defendant's Reply to Plaintiff's Response to Defendant's Cross-Motion for Partial Summary Judgment (Def.'s Reply) at 4.

When parties to a contract dispute the meaning of their agreement, the court must examine the contract language to determine whether it is ambiguous. *See Fort Vancouver Plywood Co. v. U.S.*, 860 F.2d 409, 414 (Fed.Cir.1988) (conducting analysis of contract language to determine whether language is ambiguous). Contract interpretation begins with the plain language of the agreement. *See Hercules Inc. v. United*

---

6. Plaintiff also argues that defendant's claim is barred by the statute of frauds, lack of consideration, and because Lee Lewis was afforded no notice or opportunity to cure. Pl.'s MSJ at 12–

15. These additional arguments all address a possible initial finding by the court that Lee Lewis could be considered a party to the warranty.

*States,* 292 F.3d 1378, 1380–1381 (Fed.Cir. 2002) (citing *McAbee Constr., Inc. v. United States,* 97 F.3d 1431, 1435 (Fed.Cir.1996)). Courts should read contract provisions to " 'effectuate [the] spirit and purpose' " of the entire contract such that " 'an interpretation which gives a reasonable meaning to all of its parts will be preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless, superfluous or achieves a weird and whimsical result.' " *Gould, Inc. v. United States,* 935 F.2d 1271, 1273 (Fed.Cir.1991) (quoting *Arizona v. United States,* 216 Ct.Cl. 221, 575 F.2d 855, 863 (1978)). Contract language is ambiguous if it is susceptible to two different interpretations, each of which is consistent with the language of the contract. *See Lockheed Martin IR Imaging Sys., Inc. v. West,* 108 F.3d 319, 322 (Fed.Cir.1997) (citing *Cmty. Heating & Plumbing Co. v. Kelso,* 987 F.2d 1575, 1579 (Fed.Cir.1993)). If a term is unambiguous, the court may not give it another meaning, regardless of how reasonable it may appear to do so. *See Triax Pac., Inc. v. West,* 130 F.3d 1469, 1473 (Fed.Cir.1997).

■ Plaintiff claims that the plain and ordinary meaning of the words "roofing contractor" used in ¶ 1.08 cannot be construed to refer to plaintiff because plaintiff is referred to as "Contractor" throughout the remainder of the contract. Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment (Pl.'s Reply) at 5. The court agrees. The contract clearly obligated the "roofing contractor" to furnish the requisite roof warranties and, read in context of the entire contract, plaintiff was the "Contractor," not the "roofing contractor."

Defendant points to three additional provisions to support its argument that ¶ 1.08 of the contract requires plaintiff to provide a roof warranty. First, defendant argues that ¶ 20(a), entitled "SUBCONTRACTS," expressly provides that there is no contractual relationship between any subcontractor and the USPS. Def.'s Resp. at 8. *See also* JE at 48. Defendant reasons that ¶ 1.08 must require a warranty to be provided by plaintiff

as the prime contractor because otherwise a contractual relationship would be created between a subcontractor and the USPS. Def.'s Resp. at 8.

Paragraph 20(a) of the contract states: "Nothing contained in the contract shall be construed as *creating* any contractual relationship between any Subcontractor and the Postal Service." JE at 48 (emphasis added). This provision of the contract creates no ambiguity when read with ¶ 1.08 because ¶ 1.08 itself does not create a contractual relationship. Instead the contract requires the "roofing contractor" to furnish a warranty. JE at 273. Any contractual relationship created between the USPS and a party other than plaintiff was instead created by the terms of the roof warranty that was later signed by USPS representatives and the manufacturer Dynamit.[7] *See* JE at 644–649.

Second, defendant argues that ¶ 20(b), entitled "SUBCONTRACTS," obligates plaintiff to be responsible to the USPS for the acts and omissions of its subcontractors and their employees. Def.'s Resp. at 8. Paragraph 20(b) states: "The Contractor shall be responsible to the Postal Service for acts and omissions of his own employees and of Subcontractors and their employees. He shall be responsible for the coordination of the work of the trades, Subcontractors and Suppliers." JE at 48.

The court agrees that the contract holds plaintiff liable for acts and omissions of "subcontractors and their employees." In this case, however, the roofing contractor took the action it was required to take under the contract to "furnish" to the owner the manufacturer's warranty. JE at 273. There is no dispute that the warranty was furnished. Plaintiff is not liable to defendant through its subcontractor, Anchor Roofing, because no act or omission of Anchor Roofing is complained of. Defendant did not even allege that Dynamit is a subcontractor. With respect to suppliers, such as the roofing manufacturer here, plaintiff is responsible only for "coordination." No defect in plaintiff's "coordination" with respect to Dynamit is alleged.

---

7. In fact, defendant admits the warranties were accepted by the contracting officer on the project. Appendix to Plaintiff's Motion for Sum-

mary Judgment and Brief in Support, Ex. 6 at 4 (Defendant's Response to Plaintiff's First Set of Requests for Admissions).

■ Finally, defendant argues that ¶ 67(d) of the contract required plaintiff to "obtain" manufacturer's warranties furnished "in the ordinary course of the manufacturer's business, and to furnish all information required to make those warranties legally binding and effective." Def.'s Resp. at 8. The court finds that plaintiff fulfilled these contractual obligations because it did in fact obtain and furnish the necessary warranties in the form of the warranties provided by Dynamit. JE at 644–649. Those warranties were accepted by defendant. JE at 645–649.

Based on the plain and unambiguous language of ¶ 1.08 and in the light of the other provisions argued by the parties, the court finds that the contract did not create an agreement that made plaintiff the warrantor of the roof. Contrary to defendant's argument, the fact that plaintiff performed its contractual obligation to provide a labor and materials warranty on the roof does not make plaintiff the roof warrantor.

Because the foregoing is dispositive of defendant's claim that it is entitled to sue plaintiff under the roof warranty, the court finds plaintiff's additional defenses based on the statute of frauds, lack of consideration, and lack of notice, and defendant's counter-arguments on those issues, to be MOOT.

## C. Latent Defects Issue

The parties originally agreed to limit their summary judgment motions to the issue of breach of warranty. See Pl.'s MSJ at 6. However, both parties addressed the latent defects issue in their respective motions for summary judgment. See Plaintiff's Response to Defendant's Cross–Motion for Summary Judgment (Pl.'s Resp.) at 14–20; Def.'s Resp. at 16; Def.'s Reply at 5–6.

Defendant alleges that the roofing material used on the facility contained a latent defect and that therefore plaintiff is liable for the replacement cost of the roof. Def.'s Resp. at 16. Plaintiff argues that the defects were not latent because the defendant had knowledge of the risks associated with the roofing material. See Pl.'s Resp. at 15. Plaintiff maintains, in the alternative, that even if a latent defect existed, defendant is barred from recovery because it did not act in a timely manner. See Pl.'s Resp. at 16.

■ Under FAR 52.246–2(k)[8], the government's acceptance of supplies is "conclusive, except for latent defects, fraud, gross mistakes amounting to fraud, or as otherwise provided in the contract." 48 C.F.R. § 52.246–2(k). The existence of a latent defect negates the effect of a final acceptance. See Spandome Corp. v. United States, 32 Fed.Cl. 626, 630 (1995) (citing United Techs. Corp. v. United States, 27 Fed.Cl. 393, 398 (1992)).

■ The government must assert a claim within a "reasonable time" after the discovery of a latent defect. Perkin–Elmer Corp. v. United States, 47 Fed.Cl. 672, 674 (2000) (quoting Bar Ray Prods., Inc. v. United States, 162 Ct.Cl. 836, 837–38, 1963 WL 8524 (1963)). To revoke its acceptance of supplies, the government "must assert its claim in a timely manner, and prove by a preponderance of the evidence that a latent defect existed at the time of final acceptance which was hidden from knowledge as well as sight, and could not be discovered by the exercise of reasonable care." Id. (quoting Spandome, 32 Fed.Cl. at 630 (citing United Techs., 27 Fed.Cl. at 398)). The government may act reasonably when it delays revocation of acceptance to determine conclusively that the supplies were defective or to work with the contractor to solve the problem. See Perkin–Elmer, 47 Fed.Cl. at 674–675 (citing Jung Ah Indus. Co., 1978 WL 2436, ASBCA No. 22632, 79–1 B.C.A. (CCH) ¶ 13,643 (1978)). No precise formula exists to determine if a delay is reasonable, instead that determination must be made on a case-by-case basis. See Perkin–Elmer, 47 Fed.Cl. at 675.

In this case, defendant has acknowledged that "[s]hortly after completion of the facility, the roof began to leak." Def.'s Resp. at 2. Defendant further states, "The leaks were the result of latent defects in the roofing material." Id. It may be that defendant knew of the alleged defects in the roofing material as early as 1990. Defendant clearly

---

8. This provision is included in the contract at ¶ 51(g). See JE at 55.

knew of any roof defect by November, 1994 when an independent roofing consultant determined and advised defendant that the roof had "failed" and that failure was caused by "defective materials." JE at 1091. Defendant notified plaintiff, Trocal and HPG of these "serious roof deficiencies" in March and May of 1995. *Id.* In response, HPG replaced one-third of the roof on the facility pursuant to the warranty. Def.'s Resp. at 2. In 1996, a roof consultant informed the USPS that "this roof has never performed ... [and] is not fit for the purpose intended." JE at 1598. During a hailstorm in April 1997, the roof developed several hundred additional leaks in the portion that had not been replaced. The roof was subsequently replaced completely by the USPS. Def.'s Resp. at 2.

Defendant argues that plaintiff received timely notice in 1995 and that defendant was not obligated to pursue its latent defects claim until the roof warranty had been breached. Def.'s Reply at 8. The court could not locate in the current record any correspondence between defendant and plaintiff after the 1995 notification and prior to the contracting officer's final decision on December 6, 1999.

The government's delay in issuing a final decision may be reasonable in certain circumstances. *See Perkin–Elmer,* 47 Fed.Cl. at 674–675. In *Perkin–Elmer,* the court found that notice to the contractor in 1991 that the product was defective and that the government was considering taking action was not sufficient to prevent the issuance of the final decision six years later from being found "unreasonable." *Perkin–Elmer,* 47 Fed.Cl. at 677.

According to the record as presently developed, defendant was notified in a May 21, 1997 letter that HPG did not intend to honor the warranty. JE at 1056. Defendant continued to submit claims under the warranty to HPG and its insurers from July 28, 1997 through October 15, 1999. *See* JE at 1072, 1075, 1090, 1094, 1095, 1902–1904, 1907. Defendant received no response from HPG or its insurer for 18 months. JE at 1904.

Given the absence from the parties' proposed findings of uncontroverted fact of de-

tailed treatment of the facts relevant to a determination of the existence of latent defects, the time of discovery of any such defects, and the reasonableness of defendant's actions after discovery, the court defers a decision on the issue until after further proceedings.

III. Conclusion

For the foregoing reasons, plaintiff's Motion for Summary Judgment is GRANTED as to its request for a declaration that the plaintiff is not liable to defendant as warrantor of the roof and is otherwise DENIED. Defendant's Cross–Motion for Summary Judgment is DENIED. The parties shall, on or before October 21, 2002, file a joint status report or, if they cannot agree, separate status reports, addressing further proceedings to resolve the latent defects issue.

IT IS SO ORDERED.