Hermino Pagan **PADILLA** aka Pagan Construction, Inc., Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 02–1122C.

United States Court of Federal Claims.

Nov. 26, 2003.

Joseph Deliz, Esq., Bayamon, Puerto Rico, for plaintiff.

Margaret E. McGhee, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington D.C., with whom were, Patricia M. McCarthy, Commercial Litigation Branch, Civil Division, United States Department of Justice, Robert

D. McCallum, Jr., Assistant Attorney General, David M. Cohen, Director, and Robert E. Kirschman, Assistant Director, for defendant.

## *OPINION*

MARGOLIS, Senior Judge.

This action is before the Court on cross motions for summary judgment, pursuant to R. CT. FED. CL. 56 ("RCFC"). Plaintiff filed a complaint alleging defendant breached a service contract. Defendant moves for summary judgment, claiming that the contract at issue was a requirements contract under which plaintiff was paid in full for all orders it completed. Plaintiff opposes defendant's motion and also moves for summary judgment, claiming first, that defendant breached the contract when, after Congress lifted a moratorium, defendant gave work included under the contract to a third party and second, that a modification to the contract created a binding obligation on defendant and thus, when defendant gave work under the modification to a third party it breached the contract. After careful consideration of both parties briefs and oral arguments, defendant's motion for summary judgment is GRANTED, and plaintiff's motion for summary judgment is DENIED.

## *FACTS*

On August 23, 1999, the United States Army ("Army" or "defendant") entered into Contract No. DAJN02–99–D–0014 ("Contract 0014") with Hermino Pagan Padilla ("Pagan Construction" or "Plaintiff") for the repair, installation, and continuous maintenance of fences on the Fort Buchanan, Puerto Rico base. The contract was a requirements contract, which specifically incorporated FAR 52.216–21. The contract obligated the Army to order all of its requirements for the supplies and services specified in the Contract Schedule from Pagan Construction and, in turn, required Pagan Construction to provide all the supplies and services ordered by the Army during the contract period.

The contract had various Contract Lines ("CLINs"), which divided the work under the contract into different categories. Under each CLIN there was a list of line items, which laid out the specific supplies and services that might be necessary to carry out the work specified by each CLIN. For the base year of the contract there were only two CLINS—0001 and 0002. CLIN 0001 was for the installation of chain link fences at the base. Under CLIN 0001, there were line items which represented the different supplies and services the Army thought would be necessary to install the chain link fences. Under CLIN 0002, there were line items for the maintenance and repair of the chain link fences at the base.

The contract was originally set to run from the date of award through June 30, 2000 (a period of one year), and had a total estimated value of $599,184. Two subsequent modifications extended the contract period until December 31, 2000, and increased the total estimated value to $1,971,188. First, Modification PO0002 ("Modification 2") increased the estimated quantities under certain line items, thereby increasing the total estimated value of the contract. Second, and more importantly for this action, Modification PO0004 ("Modification 4"), added a line item (SUB–CLIN 0002BV), under CLIN 0002, for the installation and removal of fence coverings on the Base and also expanded the scope of work under the contract to include other USARSO properties in Puerto Rico, including Ramey Base, Aguadilla; Camp Santiago, Salinas; and Isla Grande, San Juan. It specified that the maximum quantity that could be ordered under this line item was 10,000 linear feet of "shade fabric fence covering," for a maximum amount of $51,500.

During the contract period, the Army issued 16 delivery orders for a total value of $1,276,898.93. Pagan completed, and was paid in full, for each of the 16 delivery orders. Two of these delivery orders, both for the installation of fabric fence covering, were issued pursuant to Modification 4. The first, Order No. 9, issued on June 15, 2000, called for 2,330 linear feet of fence covering for a total value of $11,999.50. The second, Order No. 10, issued on June 22, 2000, called for 5,048 linear feet of fence covering for a total value of $25,997.20. Pagan Construction

completed, and was paid in full, for both of these delivery orders.

On October 30, 2000, Congress imposed a moratorium on new construction at Fort Buchanan. Floyd D. Spence National Defense Authorization Act for FY 2001, Pub.L. No. 106–398, § 1507, 114 Stat. 1654 (2000) [hereinafter "moratorium" or "construction freeze"]. The moratorium had the effect of halting performance under the contract. The last delivery order under the contract was issued on October 30, 2000. On December 31, 2000, Contract 0014 expired. The last payment was made and accepted, without objections, on January 30, 2001.

On March 8, 2002, 14 months after the last payment under the contract, Pagan Construction filed a claim with the U.S. Army South, Fort Buchanan Directorate of Contracting alleging that Pagan Construction and the Army entered into a contract on June 15, 2000, under which Pagan Construction was to remove an old fence and install a new fence. According to Pagan Construction the fence was to be 10,000 linear feet in size, and the Army was to pay Pagan Construction $1,971,188. Pagan Construction claimed the Army breached this contract when it gave this work to a third party. On March 25, 2002, the Contracting Officer denied Pagan Construction's claim and this lawsuit followed.

## DISCUSSION

In this action, the Army moves for summary judgment, arguing that the contract was a requirements contract, under which the Army paid Pagan Construction in full for all delivery orders issued and performed. In response, Pagan Construction opposes defendant's motion and, in the alternative, moves for summary judgment. Pagan Construction argues that it entered into a binding contract with the Army for the removal and installation of fence coverings at Fort Buchanan; that a moratorium on new construction was put in place; that after Congress lifted the moratorium, the Army gave the remainder of the contract to a third party, thereby breaching the contract. During oral arguments, defendant stated that to its knowledge the moratorium had not been lifted. While this

creates an issue of fact, it is not "material," in that it would affect the outcome of the case, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and thus does not prevent summary judgment.

When there are no disputes over material facts and the only issues to be determined involve questions of law, summary judgment is appropriate. R. Ct. Fed. Cl. 56(c); *Anderson,* 477 U.S. at 247, 106 S.Ct. 2505. In this case, there are two main issues—(1) whether the Army breached Contract 0014 when it ordered similar work from a third party, after Contract 0014 expired and (2) whether Modification 4 created a binding obligation on the Army to purchase the maximum quantity of supplies and services therein specified. Because both of these issues involve solely questions of law, this case is ripe for summary judgment.

### 1. Moratorium

Pagan Construction first alleges that the Army breached Contract 0014 when, after Congress lifted the moratorium, it gave work included under the contract to a third party. Plaintiff does not claim that the Army gave the work to a third party during the contract period. Rather, it appears that Pagan Construction has two bases for this breach claim. First, it asserts that the Army was obligated to give the work specified under the contract only to Pagan Construction. Therefore, when the Army gave it to a third party, it breached the contract. Second, it claims that the moratorium had the effect of staying the contract period. Although the contract, by its terms, expired on December 31, 2000, plaintiff contends that the construction freeze automatically extended the contract period for an unspecified amount of time. Therefore, when the Army gave work covered by the contract to a third party it committed a breach, even though the work was awarded after December 31, 2000. On the other hand, defendant argues that Contract 0014 was a requirements contract, under which the Army's only contractual obligations were to estimate its requirements in good faith and to purchase the services it required during the contracting period from Pagan. Defen-

dant contends that because plaintiff has failed to demonstrate that either of these obligations were breached, plaintiff has failed to show any breach of contract by the Army. These conflicting claims present two issues of law for this Court to resolve—whether the contract required the fence covering work to be done only by Pagan and whether the moratorium automatically extended the performance period under the contract.

■ Neither party disputes that Contract 0014 was a requirements contract. Because a requirements contract is primarily designed to give the government flexibility in carrying out its operations, the government has significant freedom in determining its requirements. *Technical Assistance Int'l., Inc. v. United States*, 150 F.3d 1369, 1371–72 (Fed.Cir.1998). The law, however, limits the government's freedom by imposing a duty to act in good faith. *Id.* at 1372; *Shader Contractors, Inc. v. United States*, 149 Ct.Cl. 535, 541, 276 F.2d 1 (1960). Under a requirements contract, this duty to act in good faith creates three basic obligations for the government. First, the government must use reasonable care and act in good faith in computing its estimated needs. *Rumsfeld v. Applied Cos., Inc.*, 325 F.3d 1328, 1335 (Fed. Cir.2003) (quoting *Medart, Inc. v. Austin*, 967 F.2d 579, 581 (Fed.Cir.1992)). Second, the government must purchase all services or supplies it requires during the contracting period from the contractor. *Id.* Finally, the government must exercise good faith in determining what it actually requires during performance. *Technical Assistance*, 150 F.3d at 1373.

Having established the obligations of the parties under this requirements contract, this Court must now look at what effect, if any, the construction freeze had on the contract. Plaintiff first alleges that the Army's failure to order fence installation services because of the moratorium amounts to a breach. It appears that plaintiff is arguing that but for the moratorium, the government would have required the 10,000 linear feet of fence covering prior to December 30, 2000, the expiration date of the contract. According to Pagan, it therefore follows that by failing to order any fence covering during the morato-

rium the government breached its duty to act in good faith.

■ To show a breach of contract, the contractor has the burden of showing that the government acted in bad faith in reducing its requirements. *Technical Assistance*, 150 F.3d at 1373. To establish bad faith, the contractor must show that the government's actions were taken in an attempt to avoid its obligations under the contract. *Id.* If, however, the government has a "valid business reason" for the reduction, other than dissatisfaction with the contract, there is no breach. *Id.* at 1372.

■ Turning to the facts of this case, this Court finds that the Army did not breach Contract 0014 when, due to the moratorium, it stopped ordering services from plaintiff. Plaintiff does not allege that the Army stopped placing orders for any reason other than that the moratorium prohibited it from doing so. While plaintiff asserts that the defendant "maliciously, purposely, and arbitrarily reneged and breached the [contract]," Pl.'s Complaint at 3, it fails to provide any evidence in its motion for summary judgment to support this allegation or, at a minimum, to establish a genuine issue of material fact. Pagan's complaint sets forth nothing more than a conclusory allegation, which is insufficient in response to defendant's motion for summary judgment under RCFC 56(e). *C.W. Over & Sons, Inc. v. United States*, 44 Fed.Cl. 18, 22 (1999).

In this case, Congress, as part of an appropriations bill for military activities, imposed a moratorium on improvements at Fort Buchanan. Because Contract 0014 called for services prohibited by the moratorium, the Army had no requirements during the length of the moratorium. This is not a case where the government had requirements but turned to other, less expensive sources. Nor is this a case where the moratorium was nothing more than an act taken by the contracting agency itself, in order to avoid its contractual obligations. Rather, in this case, the reduction in the Army's needs was caused by circumstances beyond the control of either party. *Technical Assistance*, 150 F.3d at 1373–74 (finding no breach where the gov-

ernment reduced its requirements under a contract for the maintenance and repair of fleet vehicles, because it accelerated its replacement rate in order to improve the fleet). At the time the Army entered into the contract with Pagan Construction it was unaware that Congress would impose a moratorium. While the Army's actual requirements might have been less then Pagan Construction or the Army anticipated, the Army was not required to do anything more than it did. This Court finds plaintiff's claim to be without merit.

■ Pagan Construction next claims that the moratorium automatically extended the performance period under Contract 0014. According to plaintiff, the contract did not end at the time set out in the contract (December 31, 2000), but rather was extended for a period of time equal to the length of the moratorium. Thus, it claims that the Army breached its contract when it awarded work under the contract to a third party. Pagan Construction does not cite to, nor has this Court found, any case that supports this contention.

The contract included FAR 52.217–8 (Option to Extend Services), which sets out the procedure the government must follow to extend services under a contract. Under this provision, the government may require continued performance *only if* the Contracting Officer provides the contractor with written notice within a specified period. Under the terms of the contract this was the only way for the government to extend the contract period. The Contracting Officer never executed a modification extending the contract period to account for the moratorium.[1] Therefore, according to the unambiguous contractual terms, the contract expired on December 31, 2000, and thereafter, defendant was free to order the same services as set out in Contract 0014 from other parties.

Therefore, as a matter of law, plaintiff's claim fails.

As a tangential matter, Pagan Construction notes in its motion for summary judgment that the "moratorium maintains the status quo until [it is] lifted," because if it did not, it would provide an "unfair advantage to the Defendant as a party to a contract and cause, as in this case, unfair economic hardship to ... contractors." Pl.'s Opp. at 10. As the case law makes clear, however, "the risks associated with variance between actual purchases and estimated quantities are allocated to the contractor." *Medart*, 967 F.2d at 581. The very nature of a requirements contract presupposes uncertainty about the government's actual needs. *Id.* In exchange for this risk of uncertainty in actual orders the contractor obtains the exclusive right to fill all of the government's needs for that particular item and is also able to charge a premium price for the supplies or services it will provide. *Technical Assistance*, 150 F.3d at 1372 (citing *Shader Contractors, Inc.*, 276 F.2d at 7). This is the bargain a contractor strikes when it enters into a requirements contract with the government. Therefore, when entering into requirements contracts with the government, contractors are aware of this uncertainty and the resulting risks. Pagan Construction, having entered into a requirements contract, cannot now ask this Court to shift these risks because it feels that its bargain turned out to be unfair. *See, e.g., Dot Sys., Inc. v. United States*, 231 Ct.Cl. 765, 768, 1982 WL 25218 (1982).

### 2. Modification 4

Pagan Construction next alleges that the Army breached a contract, executed on June 15, 2000, for the removal of an old fence and installation of a new fence, 10,000 linear feet in length, at Fort Buchanan. Plaintiff bases its breach claim on Modification 4.[2] Accord-

1. Other than Modification 5, which extended the contract from July 1, 2000 to December 31, 2000, the Army never issued a written modification, pursuant to 52.217–8, that extended the contract period.

2. Plaintiff attached a copy of Modification 4 to its complaint. Further, in its motion for summary judgment, plaintiff asserts that the Army breached a contract with it that was executed on June

15, 2000, the date Modification 4 was signed. Further, plaintiff alleges that the contract was for 10,000 linear feet, which was the maximum quantity set out in Modification 4. While the plaintiff claims the contract was for the removal and installation of a fence, Modification 4 was for the removal and installation of fence coverings. Given plaintiff's allegations, the only rea-

ing to plaintiff, Modification 4 created a binding obligation for the Army to order 10,000 linear feet of shade fabric fence covering for installation at Fort Buchanan. It is unclear whether plaintiff is alleging that Modification 4 is a contract, separate and distinct from Contract 0014, or that Modification 4 is a delivery order, issued pursuant to Contract 0014, that obligates the Army to purchase all the fabric specified therein. The defendant, on the other hand, argues that Modification 4 was neither a separate contract nor a delivery order, but rather was a part of Contract 0014. To determine whether plaintiff's breach claim has merit, this Court must first determine the legal effect of Modification 4.

■ When interpreting disputed contractual provisions, the primary objective for the court is to determine the intent of the parties to the contract at the time they contracted. *Veit & Co., Inc., v. United States,* 56 Fed.Cl. 30, 34 (2003); *PCL Constr. Serv., Inc. v. United States,* 47 Fed.Cl. 745, 785 (2000). This intent is determined by an objective reading of the contract language, not by a party's statements in subsequent litigation. *Varilease Tech. Group, Inc. v. United States,* 289 F.3d 795, 799 (Fed.Cir.2002).

The Court must "begin with the plain language" of the contract, and interpret it "in a manner that gives meaning to all of its provisions and makes sense." *McAbee Constr. Inc. v. United States,* 97 F.3d 1431, 1435 (Fed.Cir.1996); *see also Lee Lewis Constr., Inc. v. United States,* 54 Fed.Cl. 88, 90–91 (2003). If the contract provisions are clear and unambiguous, the Court's inquiry is at an end, and the plain and ordinary meaning of the contract controls, *Forman v. United States,* 329 F.3d 837, 842 (Fed.Cir.2003) (citing *McAbee,* 97 F.3d at 1435), regardless of either parties' subjective, unexpressed intent. *PCL Constr. Serv., Inc.,* 47 Fed.Cl. at 785. This Court may not, by its own construction, "import words into a written contract which materially change its meaning as expressed by the parties." *Hongkong & Whampoa Dock Co., Ltd. v. United States,* 50 Ct.Cl.

213, 223, 1915 WL 1085 (1915); *Lee Lewis,* 54 Fed.Cl. at 91.

■ The contract language shows that Modification 4 can only be interpreted as a modification to Contract 0014 that created no obligations for the Army other than those created by the original agreement. The Modification was executed on Standard Form 30, the form typically used when government agencies make amendments or modifications to solicitations or contracts.[3] Both the government agency and the contractor involved must sign at the bottom of the form for the changes to be effective. At the top of the form, in bold, capital letters, it states: "AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT." Def.'s Mot. Summ. J. at App. 141. It specifies that this change modified Contract 0014, which was executed on August 25, 1999. *Id.* at 142. In Box No. 14 (Description of Modification), it states: "[t]he purpose of this modification is to ... [a]dd a line item to install or remove fence coverings ..." *Id.* If Modification 4 is interpreted as a separate contract, these contract terms make no sense. It would be irrational for the parties to label it as an amendment of contract or specify that it modified a different contract if it was intended to create a separate contract.

In a similar case, *Appeals of Solano Aircraft Serv., Inc.,* ASBCA No. 20677, 77–2 BCA (CCH) ¶ 12,584, 1977 WL 2294 (May 27, 1977), Solano claimed that a modification to its requirements contract created a binding obligation on the government to order the entire amount specified in the modification. The modification extended the contract period and increased the estimated amount of the contract. The Court denied Solano's claim finding the agreement was exactly what it said it was—a modification to the original contract, which "was, and remained, a requirements type contract with payment depending upon performing the requirements as ordered." *Id.* at *7–8. The Court found that because the language was "clear and

---

sonable conclusion is that plaintiff bases its claim on Modification 4.

**3.** 48 C.F.R. § 53.243 states, in pertinent part:

SF 30 is prescribed for use in ... *modifying contracts,* as specified in 42.1203(h), 43.301, 49.602–5, and elsewhere in this chapter.... (emphasis added).

unequivocal," no contractor could be misled into believing that it meant anything other than what it clearly stated. Similar to *Solano,* this agreement is exactly what it states— a modification to Contract 0014. *Id.*

Further bolstering this conclusion is a letter, dated May 25, 2000, that the contracting officer sent to Pagan Construction explaining the legal effect of Modification 4. While not a part of the contract itself, this letter is entitled to weight as evidence of the contemporaneous understanding of the parties. The Subject line of the letter read "Contract Number DAJNO2–99–D–0014, Request for Proposal for Repairs for Fence Repairs." Def.'s App. at 150. The first sentence made clear that Modification 4 was a modification to Contract 0014. It stated: "In accordance with the clause entitled, Changes, the following change to *this contract* is proposed: ... b. Installation or removal of fence coverings per attached drawings and specifications." *Id.* (emphasis added). Further, the letter asked Pagan to structure its cost proposal in accordance with the "Modification Proposals" clause set forth in Contract 0014. This letter shows that the parties intended Modification 4 to be a modification to Contract 0014. It further shows that this intention was made in a clear and unambiguous manner. Given this letter, it was unreasonable for Pagan Construction to assert that the parties intended for Modification 4 to be a new contract, separate and distinct from Contract 0014.

The course of dealings between Pagan Construction and the Army also shows that Modification 4 was intended to be a modification to Contract 0014 and not a separate contract. Prior to Modification 4, the Army and Pagan executed 3 modifications. Each modification is printed on the same form as Modification 4 and each is labeled P00001, P00002, and P00003, respectively. Pagan Construction does not claim that any of the prior modifications are anything but modifications to Contract 0014, carrying with them the obligations of Contract 0014 to the extent unchanged by the modifications. Pagan Construction understands the legal effects of these modifications. It is unreasonable for Pagan Construction to now contend that Modification 4 has a different legal effect than these prior modifications.

In addition, the Army issued two delivery orders pursuant to Modification 4, which were both completed by Pagan Construction. Both delivery orders specified that they were issued pursuant to Contract 0014 and also stated that they were issued subject to the terms and conditions of Contract 0014. While the two delivery orders called for a substantial part of the total estimated amount of $51,500 set forth in Modification 4, they did not call for the entire amount. Yet, throughout performance, Pagan Construction did not complain that the Army had not ordered the entire quantity set forth in Modification 4. Nor did it seek clarification regarding its interpretation of Modification 4. These delivery orders are no different than the prior eight delivery orders Pagan Construction completed. Pagan Construction does not dispute that those delivery orders were made pursuant to a requirements contract. It is unreasonable for Pagan Construction to now contend that it attached a different meaning to delivery orders 1–8 than it did to Delivery Orders 9 and 10.

Based on the modification's terms, the contemporaneous understanding of the parties, and the course of dealing between the parties, this Court finds, as a matter of law, that Modification 4 was a modification to Contract 0014, the effect of which was to extend the scope of services Pagan Construction was to provide under the original contract. Because Modification 4 is part of a requirements contract, the Army's only duties are: (1) to use reasonable care and act in good faith in computing its estimated needs, *Applied Cos.,* 325 F.3d at 1335, (2) to purchase all services or supplies it requires during the contracting period from the contractor, *Id.* at 1334, and (3) to exercise good faith in determining its requirements during performance. *Technical Assistance,* 150 F.3d at 1373. Pagan Construction presented no evidence to show the Army breached any of these requirements. Therefore, as a matter of law, Pagan Construction's breach claim, based on Modification 4, fails.

### 3. *Procedural Issues*

Pagan asserts two further arguments in opposition to defendant's motion for summary judgment. First, Pagan claims that it is entitled to discovery prior to this Court's resolution of the summary judgment motion. Second, Pagan asserts that summary judgment is inappropriate because the documents submitted by defendant are inadmissible hearsay and therefore cannot be used by the Court to grant a summary judgment motion. This Court finds that both of these arguments lack merit.

Under RCFC 56(f), a court may refuse to rule on a summary judgment motion if the party opposing that motion sets forth, by affidavit, the "explicit reasons why discovery is required." *C.W. Over & Sons, Inc.*, 44 Fed.Cl. at 23 (citing *Opryland USA Inc. v. Great American Music Show, Inc.*, 970 F.2d 847, 852 (Fed.Cir.1992)). The party must set forth "with some precision," the evidence it hopes to obtain, how this evidence would likely disclose issues of material fact, and why it is unable to access such evidence without further discovery. *Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1144 (Fed.Cir.1996) (citing *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1442 (5th Cir.1993)). This Court will not permit discovery "merely to satisfy a litigant's speculative hope of finding some evidence that might tend to support a complaint." *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 627 (Fed.Cir.1984).

In this case, plaintiff has not filed an affidavit supporting its request for additional discovery. Setting aside this procedural error, plaintiff has presented no basis for this Court to grant further discovery. Pagan merely asserts that "summary judgment may be granted only after the non-moving party has had an 'adequate time for discovery.'" Pl.'s Opp. at 5. It does not state, with any precision, what evidence it hopes to obtain and how that evidence will likely create a genuine issue of material fact. *See Simmons Oil Corp.*, 86 F.3d at 1144. Pagan's mere assertion that discovery is necessary is insufficient. *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560, 1567 (Fed.Cir.1987). Plaintiff's RCFC 56(f) motion is DENIED.

Pagan next argues that defendant's motion for summary judgment should not be granted because it is supported by inadmissible hearsay evidence that this Court cannot consider in resolving a summary judgment motion. In support of its summary judgment motion defendant submitted copies of Contract 0014, all contract modifications, all delivery orders under Contract 0014, and all invoice statements corresponding to each delivery order. Pagan is incorrect that defendant's documents constitute inadmissible hearsay. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c). When the evidence offered has legal significance independent of the truth of any statement contained in it, it is not hearsay. FED. R. EVID. 801(c) advisory committee's note; *Kepner–Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 540 (5th Cir.1994). A contract is a type of verbal act "to which the law attaches duties and liabilities." *Mueller v. Abdnor*, 972 F.2d 931, 937 (8th Cir.1992). Consequently, a contract has independent legal significance and is not hearsay. *Id.*

Beyond the actual contract, defendant also submitted a letter, written by the Contracting Officer and sent to Pagan, in support of its motion for summary judgment. The letter set forth proposed changes to the contract and asked Pagan to submit a "Modification Proposal—Price breakdown." Def.'s Mot. at 150–51. The letter is based on the Contracting Officer's personal knowledge and the Contracting Officer could prove the contents of the letter by testifying. Therefore, plaintiff's claim lacked merit because Contract 0014 and its accompanying documents are not hearsay, and the Contracting Officer's letter would be admissible at trial.

### CONCLUSION

For the foregoing reasons, this Court DENIES plaintiff's motion for summary judgment and GRANTS defendant's motion for

summary judgment.  The clerk will dismiss the complaint.  No costs.