ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of - | ) |
| | ) |
| MPG West | ) ASBCA Nos. 61100, 61560, 61570 |
| | ) |
| Under Contract No. HDEC09-15-D-0002 | ) |

APPEARANCES FOR THE APPELLANT:   Yuki Haraguchi, Esq.
J. Travis Pittman, Esq.
  Holmes Pittman & Haraguchi, LLP
  Greensboro, MD

APPEARANCES FOR THE GOVERNMENT:   Brian Lucero, Esq.
  Deputy General Counsel
Betsy Dulin, Esq.
Daniel O. O'Connor, Esq.
  Trial Attorneys
  Defense Commissary Agency
  Fort Lee, VA

OPINION BY ADMINISTRATIVE JUDGE WOODROW
ON APPELLANT'S MOTION FOR RECONSIDERATION

I. Background

These appeals concern a requirements contract with the Defense Commissary Agency (DeCA) to supply fresh fruits and vegetables (FF&V) to U.S. Military commissaries (i.e., grocery stores) in Japan and South Korea.

Following a three-day hearing, the Board issued an opinion on November 9, 2020, concluding that appellant, MPG West, LLC (MPG), did not meet its burden of proving that the government breached the contract or that the government constructively changed the terms of the contract. *MPG West, LLC*, ASBCA No. 61100 *et al.*, 20-1 BCA ¶ 37,739 at 183,156.

MPG moves for reconsideration of the Board's November 9, 2020 decision. Familiarity with that opinion is assumed. Because MPG West has not demonstrated errors in our findings of fact or conclusions of law, and because MPG West has not introduced newly discovered evidence, we deny the motion for reconsideration.

II.  Standard of Review

In deciding a motion for reconsideration, we examine whether the motion is based upon newly discovered evidence, mistakes in our findings of fact, or errors of law.  *Precision Standard, Inc.*, ASBCA No. 58135, 16-1 BCA ¶ 36,504 at 177,860.  A motion for reconsideration does not provide the moving party the opportunity to reargue its position or to advance arguments that properly should have been presented in an earlier proceeding.  *See Dixon v. Shinseki*, 741 F.3d 1367, 1378 (Fed. Cir. 2014).  The moving party must show a compelling reason why the Board should modify its decision.  *ADT Construction Group, Inc.*, ASBCA No. 55358, 14-1 BCA ¶ 35,508 at 174,041.

III.  Appellant Has Not Identified New Evidence or Material Mistakes in our Findings of Fact

MPG alleges several mistakes in the Board's findings of fact.  As we discuss below, MPG's disagreements with the Board's findings go to the weight accorded to particular testimony or to the Board's conclusions based upon uncontroverted evidence.  MPG offers no new factual information to rebut the Board's findings.  Moreover, none of MPG's alleged mistaken facts, even if true, would change the Board's conclusion that MPG failed to demonstrate that the government breached the contract.

A.  MPG's Efforts to Locally Source Produce

First, MPG alleges error in the Board's factual findings concerning MPG's failure to implement a local sourcing program for fresh produce.  MPG specifically contests the following factual findings:

> 76.  MPG West never implemented the local sourcing plan (tr. 2/260, 264, 3/44-45).  Instead, MPG West continued to source most of its produce from the United States and Mexico (tr. 3/44).
>
> 77.  MPG West sourced produce in the United States and Mexico through its "broker" and sister company, Parma Fruit, also owned by Mr. Penny (tr. 1/ 219-20).  MPG West paid brokerage fees to Parma Fruit for items sourced in the United States and Mexico (tr. 1/219-20).

2

> 78. By sourcing produce from the United States and
> Mexico, MPG West incurred the additional cost of
> transporting the produce to Korea and Japan (tr. 3/44).

*MPG West, LLC*, 20-1 BCA ¶ 37,739 at 183,141.

Specifically, MPG contends that it "established its subcontractor Interharvest as a vehicle to supply local produce in Japan" (app. mot. at 2). MPG points to one of the weekly pricing spreadsheets prepared by the government's pricing specialists as an example of a point in time in which MPG had obtained over 50% of the required produce items from local sources (app. mot. at 3).

MPG also points to the testimony of its owner, Mr. Penny, that MPG had purchased local produce in Korea from various local wholesale distributors during the period from December 2015 through August 2016 (app. mot. at 3). MPG further points to statements by various public officials regarding MPG's efforts to source as much local produce as possible (app. mot. at 3-4).

In its reply supporting its motion for reconsideration, MPG sets forth a "Schedule 1" table purporting to show that its import costs decreased while its in-country costs increased on a month-to-month basis from October 2015 to February 2016. According to MPG, the "Schedule 1" table draws on data from MPG's Proof of Costs Statement and from Rule 4 tabs 13b, 43i, and 41. (App. reply at 2-3)

These examples are unpersuasive and do not overcome the weight of evidence demonstrating that MPG was unprepared to locally source produce and never implemented a plan to do so. For example, MPG's own post-hearing factual findings acknowledge its difficulties in sourcing local produce, particularly at the beginning of the contract, including acknowledging that it would take 3-4 months to establish sources for local produce and that produce that is not grown on contract is often expensive and difficult to obtain on the open market (app. post-hearing facts 110-23).

Moreover, the Board's factual findings are based on unrebutted transcript testimony. For example, roughly two months after the contract started, in a January 2016 meeting with DeCA representatives, MPG assured DeCA that MPG had a plan to locally source produce through local contractors, including approximately 100 items through the Yongsan facility in Korea. *MPG West, LLC*, 20-1 BCA ¶ 37,739 at 183,141. Despite confirming its local sourcing plan in correspondence with DeCA, MPG never implemented the plan and continued to source most of its produce from the United States and Mexico. *Id.*

Finally, the "Schedule 1" table, set forth in MPG's reply brief, was not a hearing exhibit, nor did MPG provide it in its pre- or post-hearing briefs. Although

MPG asserts that the information summarized in the table was contained in its Rule 4 exhibits, the Board is not obligated to locate, organize, and summarize MPG's voluminous billing records on behalf of MPG. *See GSC Constr., Inc.*, ASBCA Nos. 59402, 59601, 21-1 BCA ¶ 37,751 at 183,251 (stating that the Board will not scour the record for appellant's evidence or do appellant's work for it).[*]

Ultimately, while it may be true that MPG was able to gradually reduce its dependence on imported produce during the period from December 2015 until February 2016, it is also true that MPG did not have a local sourcing plan in place at the start of the contract. Indeed, as MPG's owner testified, MPG relied upon its "sister" company, Parma Fruit, to import produce from the United States and Mexico at the onset of the contract and continued to do so even as MPG attempted to secure local sources. *MPG West, LLC*, 20-1 BCA ¶ 37,739 at 183,141.

At bottom, MPG has not provided any new evidence to rebut the Board's factual findings. To the extent that the Board's findings neglected to describe adequately MPG's increased sourcing of local produce over the last months of its contract performance, it does not change our conclusion that MPG initially failed to implement a local sourcing plan, despite being on notice that locally sourcing produce was crucial to successful performance of the contract. *MPG West, LLC*, 20-1 BCA ¶ 37,739 at 183,152.

### B. Whether the Government Directed MPG to Alter its Prices and Remove Items from the Stream of Commerce

MPG next finds fault with the Board's findings that the government asked, rather than mandated, that MPG lower its prices or remove produce items from the ordering guide (app. mot. at 4). According to MPG, the Board's factual findings failed to acknowledge that the government's requests were directives, rather than requests.

---

[*] "We are not charged with sorting through a haystack of documents to locate relevant facts. If we were to engage in such efforts it would cripple our ability to perform our basic function of providing a just, inexpensive and expeditious remedy . . . . In briefing we expect the parties to make specific reference to each remaining document which they contend supports their position. In the absence of such specific reference, parties risk documents not being considered in reaching our decision." *Gary Aircraft Corp.*, ASBCA No. 21731, 91-3 BCA ¶ 24,122 at 120,718 (quoting *Hawaiian Dredging & Constr. Co.*, ASBCA No. 25594, 84-2 BCA ¶ 17,290 at 86,125).

4

Specifically, at Fact 96, the Board found that:

> 96. If an item was finally determined to be unreasonably priced, Ms. Bennet and/or a member of her team requested the item be removed from the ordering guide or offered at a lower price (tr. 3/86, 91).

Similarly, the Board found:

> 100. During these calls, DeCA would ask MPG West to offer certain products at lower prices (tr. 1/97-99, 177-79).

> 101. During the weekly meetings, DeCA sometimes asked appellant to remove products, including products on the HVCI list and bagged salad, from the commissary catalogs due to the price (tr. 1/177-79; app. supp. R4, tab 57 at 96; R4, tabs 851, 867-68).

(Op. at 183,142)

Citing testimony from its owner, MPG asserts that the government continually pressured MPG to lower its prices and "directed MPG to set aside its contract rights under penalty of default termination" (app. mot. at 4).

MPG offers no new facts or evidence to rebut the Board's factual findings. MPG also ignores the context provided by the Board's other factual findings regarding the weekly price review process. In particular, DeCA's requests concerning pricing were made in the context of weekly pricing meetings, at which representatives of DeCA and MPG would negotiate the final fixed price of items. *MPG West, LLC*, 20-1 BCA ¶ 37,739 at 183,142-43. Although it was true that DeCA occasionally would direct MPG to either reduce a price or remove an item, it would do so only in accordance with the contractual requirement that prices must be fair and reasonable considering the market conditions at the time. *Id*.

Although high prices were a common concern at the weekly meetings, the DeCA Produce Category Manager testified that DeCA typically would question only ten or so items out of a catalog of 400 offerings. On a weekly basis, DeCA approved the vast majority of the items submitted by MPG West. *MPG West, LLC*, 20-1 BCA ¶ 37,739 at 183,142. For those items that DeCA questioned, DeCA gave MPG an opportunity to explain the price. *Id*. Indeed, in some situations, MPG would refuse to lower its prices, stating that the proposed price was the "new retail price" or due to a "FOB increase." *Id*. at 183,143. In all cases, MPG was free to make a business

5

decision to remove unavailable items (*id.*), or alter its profit margin on individual items. *Id*. at 183,142.

The weight of evidence and testimony demonstrates that the Board correctly concluded that the government did not breach its contractual obligations when conducting its weekly review of MPG's produce catalog.

C.  Whether the Status of Forces Agreement Obligated MPG to Import Certain Produce Items

MPG also challenges the Board's factual findings that MPG was not obligated to import any produce under the Status of Forces Agreements (SOFA) between the United States and Korea and Japan. *MPG West, LLC*, 20-1 BCA ¶ 37,739 at 183,141. Specifically, MPG challenges the testimony of the contracting officer, Ms. Petra Pulze, that MPG could choose whether or not to import items under the SOFA. *Id*. MPG challenges her testimony by alleging that the "United States government official in charge of SOFA compliance in Korea" successfully rebutted Ms. Pulze's testimony (app. mot. at 5).

We disagree. The contract expressly states that it is not subject to SOFA, and Ms. Pulze's testimony demonstrates that DeCA's conduct was consistent with the contract. *MPG West, LLC*, 20-1 BCA ¶ 37,739 at 183,141.

Ms. Pulze testified that the contract permitted embargoed items to be imported under the SOFA, but that doing so would require the contractor to coordinate with DeCA. She further testified that MPG never asked DeCA to have any items imported under SOFA (tr. 2/73-74). In response to a direct question about whether the SOFA importation process was mandatory, Ms. Pulze explained that it was not. *MPG West, LLC*, 20-1 BCA ¶ 37,739 at 183,141. Instead, the contract expressly stated that it required FOB destination delivery. *Id*. at 183,138. Indeed, the term was the subject of published vendor questions and bid protests challenging its feasibility, so MPG West should have been fully aware of the requirement. *Id*. at 183,137.

Moreover, DeCA amended the solicitation to specifically state that "[a]ny costs associated with the transportation and customs clearance of imported products must be included into the offered F.O.B. destination price" (app. supp. R4, tab 898 at 7).

MPG West unilaterally chose to import items under the SOFA agreement. *MPG West, LLC*, 20-1 BCA ¶ 37,739 at 183,141. As a consequence, DeCA had no duty to coordinate with SOFA representatives, other than to assist when MPG West requested and to avoid hindering MPG West. Indeed, DeCA did so when it wrote a letter to South Korean customs explaining that MPG West was permitted to import

6

embargoed items for sale in the commissaries. This letter achieved the desired result, as importation difficulties ended after the letter. *Id*.

The weight of evidence demonstrates that MPG possessed the discretion to import items through either commercial channels or through the SOFA process and that its choice was a business decision, not a mandate from the government.

IV. Appellant's Challenge to the Board's Contract Interpretation Fails to Establish an Error of Law

A. The Government's Estimation of its Requirements in the Solicitation Was Not a Breach of Contract

MPG asserts that the government breached the requirements contract when it failed to revise its historical data to account for changes to the contract's structure (app. mot. at 6). Specifically, MPG asserts that the government estimated its requirements based on historical data from the incumbent contract while failing to take into account the fact that the new contract relied upon obtaining local produce rather than imports under the SOFA. In support, MPG cites a series of cases establishing that the government is in breach of contract when it inadequately or negligently estimates its requirements (app. mot. at 6).

MPG's recitation of the law in its motion for reconsideration is not substantively different from the Board's discussion of the law in its opinion. *MPG West, LLC*, 20-1 BCA ¶ 37,739 at 183,147. As we stated, a breach of contract can occur when a government estimate is inadequately or negligently prepared and is included without correction in a solicitation or contract. *Id*. We further clarified that the critical measure for determining whether an estimate was negligently prepared is whether the estimate is based upon all relevant information that is reasonably available to the government at the time of the award. *Id*.

MPG's argument, therefore, is not with the Board's understanding of the law, but rather with the Board's conclusion – based on that law – that MPG failed to provide specific evidence that DeCA was negligent in estimating weekly produce quantities. *Id*. at 183,148.

MPG makes several arguments in support of its challenge to the Board's reasoning, all of which it previously made at the hearing or in its post-hearing briefing. MPG cites no new evidence in its challenge to the Board's conclusions. The Board considered and addressed each of these arguments in its opinion. *See Dixon v. Shinseki*, 741 F.3d 1367, 1378 (Fed. Cir. 2014) (holding that motion for reconsideration does not provide the moving party with an opportunity to reargue its

position); *Philips Lighting North America*, ASBCA No. 61769 *et al.*, 21-1 BCA ¶ 37,821 at 183,647.

First, MPG contends that the government was negligent by estimating its requirements based upon historical data from the incumbent contract, despite the fact that the new contract involved a significant change to the business model from the incumbent contract. In addition, MPG contends that the CO's admission – that she did not perform a business case analysis to support her estimates of the government's requirements – further compounds the government's negligence. (App. mot. at 6-7)

MPG made these same arguments in its post-hearing briefing (app. post-hearing br. at 32). We continue to find MPG's arguments unpersuasive. Because the government's estimates for its requirements were based upon historical consumption rates, it was reasonable for the government to assume store patrons would continue to need similar items and quantities of produce. *MPG West, LLC*, 20-1 BCA ¶ 37,739 at 183,137. The fact that the new contract expressly required the new contractor to use local sources as much as possible has no bearing on the reasonableness of the government's requirements. MPG has not provided specific evidence that DeCA was negligent in estimating weekly produce quantities, nor does MPG provide any new evidence in its motion for reconsideration. *Id*. at 183,148.

Next, MPG argues that the government was negligent because it ignored information indicating that the new contract model would make it difficult for the contractor to meet the government's requirements. Specifically, MPG alleges that DeCA ignored a market research report prepared by the incumbent contractor warning that it would be difficult to satisfy the government's requirements via local sources. MPG further argues that the U.S. SOFA representative in Korea warned the government in April 2014 that it would have difficulty obtaining its requirements under the new contract model. (App. mot. at 7)

We previously addressed these specific arguments in our opinion. Regarding the February 2018 market research report, we reviewed the report's conclusions and did not find them dispositive. Specifically, based upon the unrebutted testimony of the project manager for the research report, we found that the report did not segregate data generated during MPG West's performance from data generated after other contractors took over in July 2016. *MPG West, LLC*, 20-1 BCA ¶ 37,739 at 183,144. We also concluded that the report did not study the impact of the contract on MPG West, did not evaluate DeCA's conduct of weekly price reviews, and did not evaluate the startup process nor MPG West's delivery of bagged salads. *Id*. Based upon these findings, we concluded that the report did not demonstrate that the government was negligent in preparing its requirements. We see no reason to change these conclusions upon reconsideration.

The cases MPG West relies upon in its criticism of the Board's conclusions do not alter our conclusions.

These appeals are not like *Burnham Associates, Inc.*, ASBCA No. 60780, 18-1 BCA ¶ 36,934, a case cited by MPG. In *Burnham*, the Board found the government negligent in preparing a dredging estimate when it significantly underestimated the quantity of soil to be dredged from the Boston Harbor. *Id.* at 179,942-43. Nor are these appeals like *Rumsfeld v. Applied Companies, Inc.*, 325 F.3d 1328 (Fed. Cir. 2003), another case cited by MPG. In *Rumsfeld*, the United States Court of Appeals for the Federal Circuit affirmed the Board's finding that the government was negligent when it failed to inform the contractor that quantity estimates contained in its request for proposals was greatly overstated. *Id*. at 1335.

Here, in contrast, MPG does not raise an issue with the *quantities* of produce set forth in the government's estimates of its requirements. MPG does not allege that the government over- or under-estimated its needs. Instead, MPG's quarrel is with the purported difficulties of sourcing that produce in accordance with the terms of the contract.

As we held in our opinion, the contract expressly placed the burden (and concomitant risk) of sourcing produce on the contractor. *MPG West, LLC*, 20-1 BCA ¶ 37,739 at 183,149, 183,154. As we found, the record demonstrates that MPG West failed to timely implement a local sourcing plan, instead sourcing most of its produce from overseas. *Id*. at 183,141. Moreover, the record further demonstrates that MPG's successor contractors were able to fill the contract's requirements using predominantly local sources (app. post-hearing br. at 2-3).

Finally, MPG argues that the government was negligent, because the DOD Inspector General (IG) performed an audit of the government's market research and made a specific finding that it was inadequate (app. mot. at 7).

We expressly addressed the IG's market research report in our opinion, concluding that the IG report did not demonstrate that DeCA breached the contract. *MPG West, LLC*, 20-1 BCA ¶ 37,739 at 183,149. We concluded that the IG's market research report was not dispositive, because it did not differentiate between data generated during MPG West's performance from data generated after other contractors took over the contract in July 2016. *Id*. at 183,144. Moreover, the report did not address DeCA's weekly price reviews, nor its delivery of bagged salads. *Id*. MPG's motion for reconsideration raises no new arguments and introduces no new facts that would cause us to change our conclusions.

9

B.  Whether the Government Breached the Contract by Varying its
    Requirements to Avoid the Fixed Price

MPG next asserts that the government acted in bad faith as a matter of law when it varied its requirements in order to avoid obligations under the contract (app. reply at 4).  Specifically, MPG argues that the government decreased its requirements in order to avoid its contract obligations by asking MPG West to take items off the shelf because they were too highly priced, and because DeCA was concerned that the high prices for certain items would create negative publicity (app. mot. at 8-9).

MPG cites *Medart, Inc. v. Austin*, 967 F.2d 579, 581 (Fed. Cir. 1992), for the proposition that a requirements contract obligates the government to fill all its requirements at the agreed price.  This is an overstatement of the holding in that case. *Medart* holds that the government must use information that is reasonably available in order to estimate its requirements, and that the contractor bears the risk of variances in quantity.  967 F.2d at 582.  In *Medart*, the Federal Circuit affirmed the Civilian Board of Contract Appeals' holding that the government used reasonable care in computing its estimated needs based upon the previous year's orders.  The Court specifically held that the government was not required to apply any of the specific methods advanced by the appellant, such as contacting or polling end-users about their projected needs and budgets, considering the use of statistical formulas such as regression analysis, or checking the effectiveness of its estimating procedure based on past performance.  *Id*.

*Medart* supports the Board's reasoning that DeCA used reasonable care in estimating its requirements and that DeCA was not required to undertake extraordinary measures, such as performing a business case analysis to support its estimates of the government's requirements.

MPG additionally cites *Simplix*, ASBCA No. 52570, 06-1 BCA ¶ 33,240 (2006), for the proposition that variation in the government's requirements may be a breach of contract when the government acts in bad faith.  MPG's recitation of the law governing requirements contracts ignores the Federal Circuit's central holding in *Technical Assistance Int'l v. United States*, 150 F.3d 1369 (Fed. Cir. 1998). Specifically, *Technical Assistance* held that the buyer has significant freedom in determining its requirements because it has bargained for such flexibility by paying a premium price for the goods provided.  *Id*. at 1372.

We comprehensively addressed this argument in section II.C. of our previous opinion.  Consistent with the central holding in *Technical Assistance*, we hold that the contract expressly permitted DeCA the flexibility to order produce from other providers, as long as the contract with MPG West was the "primary source."  *MPG West, LLC*, 20-1 BCA ¶ 37,739 at 183,149-50.  We further held that:  DeCA conducted its weekly pricing review in a manner that was reasonable and consistent with the

10

contract terms; that DeCA developed and applied reasonable and consistent criteria to evaluate weekly prices based on the past history of prices for particular items; and that DeCA approved the vast majority of the items submitted by MPG West on a weekly basis. *Id*. at 183,150. Finally, for those items that it questioned, DeCA identified why it was questioning the price and gave MPG West an opportunity to explain the price. *Id*.

MPG's motion for reconsideration raises no new arguments and introduces no new facts that would cause us to change the conclusions set forth in our opinion.

C. Whether the Government Satisfied the Implied Duty of Cooperation

MPG challenges the Board's statement of the law regarding the implied duty of cooperation, contending that the Board incorrectly states that the duty of cooperation requires only that the government not interfere with performance. Citing a variety of Board cases, MPG asserts that the law imposes a more expansive duty on the government, including an obligation to "do what is reasonably necessary to enable the contractor to perform." (App. mot. at 12) MPG's recitation of the law is correct, but is not fundamentally at odds with the Board's statement of the law concerning the duty of cooperation. *MPG West, LLC*, 20-1 BCA ¶ 37,739 at 183,154.

MPG contends that the contract was "doomed from the start," because it involved a significant overhaul of the contract model for supplying commissaries in the Pacific theater and was imposed "without even performing adequate market research or a business case analysis" (app. mot. at 13). This is simply a restatement of arguments MPG previously made and gives us no reason to reconsider our decision.

MPG further contends that the "Board's [legal] error is compounded by the mistakes of fact that support its reasoning" (app. mot. at 13). As we discussed above, we have examined MPG's allegations of errors in our factual findings and have concluded that the record supports our findings. MPG's real issue, therefore, is not with the Board's understanding of law, but rather with the Board's application of the law.

The bottom line is that the contract placed responsibility for compliance with host-nation laws solely on the contractor, and the contractor had a great deal of discretion as to how it would comply. *MPG West, LLC*, 20-1 BCA ¶ 37,739 at 183,154. Moreover, as we discussed in our opinion, the government did more than just "basically stay out of the way" (app. mot. at 12). For example, in an effort to ease the South Korean importation process for MPG, DeCA wrote a letter to South Korean customs officials explaining that MPG was permitted to import items embargoed under the SOFA, provided that the items would be sold in the commissaries. *MPG West, LLC*, 20-1 BCA ¶ 37,739 at 183,141.

11

MPG makes no new arguments and introduces no evidence in support of its request for reconsideration. Therefore, we have no reason to change the conclusions set forth in our opinion.

### D. Whether the Bagged Salad Specifications Were Defective

MPG's final contention is that the Board erred in concluding that the bagged salad specifications were not defective. According to MPG, the Board's conclusion was based on a misstatement of MPG's claim and an insufficient statement of the law concerning defective specifications (app. mot. at 14). Citing *Essex Electro Engineers v. Danzig*, 224 F.3d 1283 (Fed. Cir. 2000), MPG contends that the threshold question in a defective specification claim is whether the contractor can follow the government's specifications and achieve the result for which the government has contracted (app. mot. at 15). According to MPG, it was impossible for MPG to supply the government's bagged salad requirements via FOB destination freight at a fixed price that included all costs and profit and also achieve a patron savings discount (app. mot. at 15). For example, if it is economically impracticable to supply a specified product at a price buyers are willing to pay, then it would support the contention that the specification is defective (app. br. at 16 (citing *Brazier Lumber Co.*, ASBCA No. 18601, 76-2 BCA ¶ 12,207)).

As we explained in our decision, to recover on a defective specification theory, MPG West must show that there was a defect, that it reasonably relied upon the defect, and that the defect was latent. *MPG West, LLC*, 20-1 BCA ¶ 37,739 at 183,155 (citing *E.L. Hamm & Assocs., Inc. v. England,* 379 F.3d 1334, 1339 (Fed. Cir. 2004)).

MPG offers no new facts or legal arguments to support its position that the Board erred in its findings or legal conclusions. Moreover, MPG West's criticism of the Board's decision does not address the Board's conclusion that MPG West failed to demonstrate that it relied on the allegedly defective specification. Indeed, when MPG West concluded that it could not profitably perform, the government agreed to remove the bagged salad requirement. *Id*. at 183,143.

Perhaps understanding that its defective specification theory lacks merit, MPG West now argues, for the first time, that meeting the bagged salad specification was commercially impracticable (app. mot. at 16-19). Specifically, MPG West contends that "the contract specified that MPG must supply the government's bagged salad requirements via FOB destination freight at a fixed price that included all costs and profit and achieved a patron savings discount." According to MPG West, achieving a patron savings discount simply was not possible with FOB delivery and a fixed price that includes all contractor costs. (App. mot. at 15)

12

A motion for reconsideration is not the appropriate place to raise an argument for the first time. *See Dixon*, 741 F.3d at 1378 (refusing to entertain an argument that should properly should have been presented in an earlier proceeding). To establish commercial impracticability, the contractor must demonstrate that it has exhausted all of its alternatives for performance, not merely that its costs have become more expensive than originally contemplated. *Jennie-O Foods, Inc. v. United States*, 580 F.2d 400, 409 (Ct. Cl. 1978).

Here, MPG West has not demonstrated that it exhausted all of its alternatives for supplying bagged salads. Other than testimony that *DeCA* suggested corrective actions, such as DeCA assuming bagged salad shipments to Korea, MPG West has proffered no evidence that it pursued other alternatives (tr. 2/213).

Rather than exhaust all alternatives for supplying bagged salads, MPG West asked DeCA to remove the bagged salad requirement, and DeCA did so. *MPG West, LLC*, 20-1 BCA ¶ 37,739 at 183,143. Moreover, MPG West admits that its successor contractor was able to successfully perform the contract (app. post-hearing br. at 2). The fact that the government agreed to remove the bagged salad requirement has no bearing on whether it was impossible to meet the requirement. Indeed, the change was bilateral and made at MPG West's request. *Id*. at 183,156.

MPG contends that, in Korea, it was impossible to perform the contract with local bagged salads in lieu of imports, because the U.S. government command in charge of food safety never provided MPG with the necessary authorization. MPG offers no new facts in support of this argument, which the Board previously rejected. *Id*. at 183,149.

Finally, MPG's contention that it could not meet the bagged salad requirement while achieving a patron savings discount is without basis, because bagged salads were not among the items to be considered in calculating the patron savings requirement. *Id*. at 183,143. As we explained in our opinion, the contract contained a "Patron Savings Requirement" applicable to 35 items of produce listed at Attachment 4 called "High Volume Core Items" (HVCI). The contract defined the Patron Savings Requirement as a price savings to the commissary patron when compared to the prices of like items from comparable private sector retail stores within the local commuting area of a commissary store in the host country.

Under the Patron Savings Requirement, MPG West warranted that prices for the listed HVCI would provide a minimum percentage of savings when compared to the prices in comparable private-sector retail stores. *Id.* at 183,139.

For these reasons, we deny the motion for reconsideration.

Dated: September 20, 2022

KENNETH D. WOODROW
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 61100, 61560, 61570, Appeals of MPG West, rendered in conformance with the Board's Charter.

Dated: September 20, 2022

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals